The final case for argument this morning is 15-5126 Acevedo v. United States. Let everybody settle in their seats. Morning, Your Honors. Good morning. My name is Jules Bernstein. I am accompanied by my co-counsel Linda Lipset. This case involves the wage claims of some 77 Customs and Border Protection employees who serve as supply chain security specialists. They assert that they are entitled to danger pay under 5 U.S.C. 5928 because they meet the requirements that the Secretary of State has established in the DSSR regulations as well as their agency's policies and practices of paying danger pay to qualified employees. Can I just ask, you don't dispute that the statute by itself doesn't make this claim or the source of the law here a money mandating? I would say, Your Honor, our position is that although it's not our principal position that in this case the statute and the DSSR do make danger pay mandatory, but we don't have to deal with that because in this case the agency has been paying danger pay to its employees since 2005. But you didn't answer Judge Toronto's question, and that is whether the statute that uses the word may, being permissive, is money mandating. I would say that the issue of may is not in this case. But that's the statute, isn't it? Well, yes, Your Honor, but the statute, what the statute says is they may get it for this purpose or that purpose or in this situation, but it doesn't say anything about the regulations of the Secretary of State. But what about the Roberts case? Yes, we believe that the statute and the regulation themselves are only authorizing, not money mandating. But that's not the holding of the Roberts case. The Roberts case, in the context of the LQA, the living quarter allowance, the statute and the regulations are not money mandating, but that was not the holding in the Roberts case. The holding in the Roberts case was that the statute, the DSSR, and the implementing regulations of the Defense Department made the LQA money mandating. Can I ask, on the statute and the regulations, is there a difference between the living quarter, living quality? I don't know what the Q stands for. Yes, the living quarter's allowance. The living quarter's allowance and the danger pay, or are those? Yes, yes. That is to say, there must be implementing regulations for living quarter allowance, but there need not be any implementing regulations for danger pay. Indeed, the Secretary of State says in her DSSR, the agency may implement supplementary regulations, but in this case, the only regulations that the agency implemented was the practice of paying danger pay. It paid danger pay to over 550. Can I ask you, I couldn't see anything in the record. I mean, you mentioned the number 551 people have been paid that. Is there anything in the record to indicate that? Yes, there is the declaration of Ms. Lipset, who went through tens of thousands of pages of documents provided by the government that demonstrated that there had been payment of danger pay. No, no, no. Well, let me finish my question. Yes, of course. My question is, 551 out of how many requests, or how many people who could have potentially qualified? There's nothing in the record with regard to requests. So that number is kind of hard to evaluate the import of that number. If there were only 551 requests and the 551 grants means that every time anyone sought danger pay, they got it, that came in kind of ways in your favor. But if we don't know if 10,000 people asked for it and only 551 got it. We know nothing about that. So that number isn't very helpful in terms of demonstrating that this is a money mandating versus a money authorizing statute, right? But what it does demonstrate is that there was a policy to pay danger pay. And what we say is... Well, there's certain people under certain circumstances that the agency might decide to grant them danger pay. I don't think anybody's disputing that there exists something called danger pay that may or may not be awarded to certain employees, right? That is true. Okay. And what we say is that if an agency has policies, has a policy to pay danger pay, that is sufficient because what the United States Court of Federal Claims said was there must be a formal policy, a written policy in order for danger pay to be paid. And we say that's just not the case. And we... But I'm still a little unclear on what your position is because nobody is disputing that the agency has, the government would say, in its discretion at various times decided to award danger pay to certain individuals. How does the fact that they have awarded certain individuals danger pay inform the issue before us, which is whether or not it's mandatory or discretionary? Because Your Honor, the agency has not set forth any regulations or rules that talk about when people are qualified. This can't be the law that supervisors just willy-nilly decide you get it and you don't, even though you're equally qualified. That there is a policy to pay danger pay, that all we want is to get into court based upon the Tucker Act to say we are entitled to danger pay. And the courtroom, these people work in dangerous places across the world under hazardous conditions. And Congress decided that there was to be danger pay for such people. And the agency has just willy-nilly proceeded to pay. As a matter of fact, the government now admits that there was a policy to pay danger pay, even though the record, in the record, they say there was no policy. So I think this is a... What are you referring to when you just said something about the government's admission? What are you referring to when you say the government now admits that there was a policy? If you look at page 34 of the government's brief, it says we had a policy of paying certain categories of employees, but not these supply chain security specialists. Now, some supply chain security specialists did get danger pay. But all throughout the record, there are declarations, sworn declarations, that was no policy. Well, suddenly we find out in the brief, off the record, that there was a policy to exclude supply chain security specialists and pay others. We don't know who those others are either. I'm looking at 34 in the brief, and they say here, contrary to Hoy, the CBP has no clearly established policy stating that SCSS employees will receive danger pay. Instead, its consistent practice is not to pay danger pay. So how is that kind of admission by the... And it goes on to say here, although it has paid danger pay to some employees, of course it has, there's no dispute on that, CBP has not established the policy. How are employees supposed to know whether they're entitled to it? Although here, although it has paid danger pay to some employees, CBP has not established the policy or practice to pay danger pay to SCS employees. Now, if you do not establish a policy, you have a policy not to pay certain people. They haven't established a policy. They had a policy to pay other people. Now, if you look at Roberts, what Roberts says is, if you are within, you allege you're within a class that's entitled, you have the right to go to court and see whether you're entitled and that's a merits issue. So in Roberts, this court said that there was jurisdiction over the... But didn't they base their assertion of jurisdiction on the regulations that existed in that case and don't exist, or the instructions or whatever title we give them? Yes, that is right. And we say that in this case, there are similarly a policy to pay danger pay, although it was unwritten. And that's where we rely upon the Supreme Court's decision in Gobert for the proposition that policy is made through decisions of courts or agencies or through general administration. That's what happened here. There was an administration of paying danger pay. And so we're in the same position as was the plaintiff in Roberts. Okay. You're into your rebuttals, so I don't want to hear from the government about your rebuttals. Thank you. Thank you. Ms. Moore. May it please the court, we respectfully request that the court affirm the judgment of the Court of Federal Claims. The trial court lacks jurisdiction because the danger pay statute, 5 U.S.C. 5928, is not a money mandating statute. Instead, the danger pay statute is a money authorizing statute. Can I just ask you, is it the government's position that these particular supply chain security specialists, that it doesn't pay these people danger pay, or simply that it does sometimes, but really it is at the government's discretion and there's no policy to pay them all the time? Your Honor, there is no policy within the CBP to pay anybody danger pay, plaintiffs nor anybody else. There's no policy whatsoever. But some of them get paid danger pay. Some have received danger pay in the past. For jurisdictional purposes, the Court of Federal Claims allowed the parties to engage in limited discovery, and that some of the results of that were that about 550 people have been paid danger pay by CBP. Do we know if any of those people were the security specialists? Supply chain security specialists? Yes. One was. One out of about 551 individuals. And this is out of about 60,000 people employed by Customs and Border Protection. Now over the years, 60,000, multiple times that, because people come and go, this discovery took place from 2005 to 2014. So in that- But you must have pretty good documentation on who gets paid and who doesn't, right? You have that documentation. Well, the discovery results revealed that 551 people have been paid danger pay from 2005 to 2014, a nine-year period. Yeah. Well, the statute says, which is kind of unusual in my experience, it concludes, the provision we've been looking at concludes by saying, in each instance where an allowance under this section is initiated or terminated, the Secretary of State shall inform the Speaker of the House and the Committee on Foreign Relations of the Senate of the action taken and the circumstances justifying it. That suggests to me there's got to be a pretty strong paper trail with respect to all of these allowances, right? Yes. And there's no argument, Your Honor, that these 551 individuals did not encapsulate everybody. In other words, the key search terms with discovery goes over tens of thousands of documents. So the plaintiffs are not saying that the 551 people are not representative of what exactly was paid danger pay to CBP employees. We don't dispute that 551 people or whatever the exact number is. There's a chart in the Adjoint Appendix for paid danger pay. Ms. Morales, what does money mandating mean? We're talking about the waiver of sovereign immunity, right? Correct. There is a statute here, and to be a waiver of sovereign immunity for jurisdictional purposes as opposed to entitlement, does it have to say must? Does it say may? It may waive sovereign immunity if other requirements for entitlement are met, and those are dealt with by regulation. So cut may be money mandating if other requirements are met? Your Honor, that's sort of a two-fold question to take. It's a what question? It's sort of a two-fold question, because there are different statutory provisions to look at in a certain order here, as in the Roberts case. First you have the Overseas Differentials and Allowances Act, ODAA. That was the enabling legislation to allow government agencies, such as DHS, to pay certain living quarters allowance at issue in Roberts, post allowances, hardship allowances, etc. to their employees. Now that ODAA uses the word may. The agencies may pay their employees these allowances. And if either state or a particular agency formally adopted a regulation saying everybody in these circumstances gets pay, that would then be within the Tucker Act. Is this right? Because the Tucker Act does not limit it to statutes, but includes regulations also. It does include regulations, Your Honor, but we don't have that either. We don't have that here, but just to complete the process in a step-by-step fashion. So the Danger Pay Act, as well as the Living Quarters Allowance, the LQA issue in Roberts, they were both enacted pursuant to the enabling legislation, which is the ODAA. They both were. They're types of allowances, the LQA in Roberts and the Danger Pay Act at issue here. And both of those statutes also, on their own terms, say may. In other words, they're both permissive. This court held in Roberts that that statutory language was permissive, the LQA. That's 5 U.S.A. 592.3. So in Roberts, it's a similar analysis. And in Roberts, the court then, because it found that the LQA itself was not money mandating, it went to the DSSR, Department of State Standardized Regulations. It looked at that, because that was the Department of State's regulations that were promulgated in response to the ODAA. Those regulations, the court found in Roberts also, they used the word may. And they set the parameters for different allowances in hardship pay, but they give the agencies complete discretion whether or not to pay those allowances or differentials. And this court held that in Roberts. The court held that the statutory language plus the DSSR language together was not money mandating. And this court held that, and I quote, therefore, the statute and the DSSR standing alone are not money mandating. They could only become money mandating if further regulations were implemented requiring payment. That's at page 1164. We have nothing here past the DSSR, nothing from the agency, DHS or CBP. I mean, it seems to me that Roberts takes us to the point where there is something different about this case from that one. And what's different is that in Roberts, they went beyond the regulations and said there was an order and a directive, I think were the two terms or something like that. And this court interpreted those particular formal actions pursuant to delegated authority in a particular way to be mandating. We don't have that. Now, my legal question is, is there a point at which a practice, if proved, rises to the level of an order or a directive that would, therefore, support a money mandating conclusion in the same way that happened, that this court drew in Roberts, though without a formal directive here? Your Honor, I don't think so. Because in all the cases in which this court has found a money mandating source of payment for these allowances and entitlements or allowances and differentials, in the Doe case, Roberts case, the court always looked to something in writing from the agency indicating by the agency's own terms that we will pay someone who is eligible under this criteria, this allowance. Outside the Tucker Act context, and to the extent you know, kind of in APA land in general, do some agency practices that are not formalized nevertheless get treated as having the same status as a regulation in the specific sense that they are then binding on the agency until changed? Your Honor, perhaps in an APA case, but again, if... I mean, are you aware of authority? That perhaps isn't helping me. Your Honor, we are not, as far as these ODAA differentials and allowances are concerned, in every instance, the Court of Claims cases, in the Trivenage case, for instance, relied on written directives or orders, regulations, policy, what have you. It's in writing, something in writing that the agency set forth explicitly that their employees would be paid a certain allowance or differential. Right, but my question is why, I will assume, because I haven't seen anything to the contrary, that what you just said is accurate as a factual matter. The question is why that should matter. It matters because otherwise, to say that nothing in writing is required, and be it an order or regulation, a policy directive or what have you, to say that nothing in writing is required, then opens us up to an ad hoc determination with every government agency, for every differential, every allowance, for this particular statute and untold other statutory provisions out there, to look at every single payment or non-payment made by every single agency, and that is not what Congress intended. You're saying that makes the statute not money mandate. Is that your point? Your Honor, without something in writing from the agency, a regulation, the DSSR speaks of a regulation. But the lack of a clear regulation makes the statute not money mandate. Yes, lack of clear regulation. In Roberts, there was no regulation, and the court still found jurisdiction. So in Roberts, there were two instructions and an order. There was a DOD instruction, a Navy instruction, and a Marine Corps command order. So under our caseload, you don't need a regulation. Something less than that can do it. This court in Roberts, according to this court in Roberts, yes. Even though this- That's the law we're following here. I'm not sure why you're taking issue with that. We're not taking issue. But the Roberts case did specifically said without further regulations, although in Roberts, it used two instructions and an order. So perhaps they were the equivalent of regulations, what have you. But in this case, we don't have anything. We have nothing in writing, no orders. They must have been the equivalent of regulations, because isn't the word regulation in the Tucker Act? Regulation is in the Tucker Act. Yes, you're right. So I mean, it had better be the equivalent of a regulation. Yes, the court didn't use the word equivalent, but it was apparently found to be the equivalent, the two instructions and the order. Again, we have nothing here. We have no order, no directive, no nothing. Yeah, but the disturbing thing is if you push back a little, and maybe I've just been part of the government for too long, but they've got broad authority here. But typically, broad authority that's granted by statute, and even some of the stuff here suggests that implementing regulations were contemplated, because that's normally what happens in the government. You get a broad discretion in the statute, and then the person in charge with implementing that provision, in order to implement it, has to have some rules, because he can't be arbitrary. He can't be discriminatory. So this just seems kind of different. Now, whether it's allowable or not allowable is another question, or whether it's money mandating. But doesn't this seem to be an odd circumstance, where there's no guidance that exists to ensure that there's fair, non-arbitrary, and non-discriminatory application of this discretionary grant? Your Honor, in the DSSR, the language of that, the opening provision, section 013, says, when authorized by law, the head of an agency may defray official residence expenses and grant post-differentials, including danger pay allowance. Then below that, it says, within the scope of these regulations, the head of an agency. Well, no, you lifted something out of that provision. That sentence that you were reading from concludes, subject to the provisions of these regulations and the ability of thought. So it contemplates regulations that give some guidance, and also the limitation, that there is a limitation, and that limitation is the availability of funds, which has nothing to do with the discretion of the implementing act. Your Honor, what I was going to read was that, towards the end of that, or a little bit below from what I had read before, the DSSR says, within the scope of these regulations, the head of an agency may issue further implementing regulations, as he, she may deem necessary for the guidance of his or her agency, with regard to the granting of and accounting for these payments. In other words, the agencies do not have to implement regulations on this. They're not required to. This is an offer to the agencies to do so. Here, CBP did not issue regulations, no order, no policy, no nothing. Neither did DHS. Can I just ask you, to the extent you know, the chief pointed out that the last sentence of 5928, 5 USC, says, in each instance where an allowance under this section is initiated or terminated, you basically have to report to Congress. Is that, can you describe practice under that provision? Open-ended question, what's happening, in fact? Your Honor, that wasn't really the subject of the discovery in this case. And it's not in the record as to how the agency reported to Congress about the individuals that were getting danger pay. The discovery was more limited as to who did receive danger pay. And the result was the 550 individuals. And do you happen to know, as a government lawyer, whether reports of this sort are getting made? Your Honor, I don't. Sometimes government lawyers get to inform us about things their clients as a whole have told them. Your Honor, that was not part of the record below. It was not really an issue below. I have no reason to believe, however, that the agency is not reporting an inheritance with the statutory requirement. But it was not really one of the relevant issues that the parties discussed. And can I ask you a question about the discovery? So the discovery uncovered 500 and something instances of pay. Was there discovery into the number of requests for such pay? Your Honor, I don't believe so. But a request for danger pay, I don't believe, was one of the interrogatories, or a request for production of documents. I see that my time is up. I respectfully request that the court affirm the judgment of the Court of Federal Claims. Thank you. Thank you. Several points. First, how does anyone in this agency know whether to grant a request for danger pay? If you are a supervisor, whether you pay it or not, there are no regulations of this agency that tell you anything. Or not to pay certain people. This is not the way the Department of Customs and Border Patrol Homeland Security can function. Separate and apart from this case, this is quite amazing. Now, counsel said 60,000 people in the agency. Not all of them work in these places that are designated as dangerous by the Secretary of State. How often they do, who knows? But a substantial number of employees got paid danger pay pursuant to a policy to pay danger pay. We say we are within that policy and are entitled to go to court the same way Roberts was entitled to go to court to say he was entitled to the LQA. Now, this court said he was properly in court, that there was jurisdiction under the Tucker Act. But guess what? He lost in this court on the merits because he did appeal as well. Now, all we want is our day in court to see whether we're entitled to danger pay. Of course, someone told Congress, a high level person in the agency told Congress, told a member of Congress, that one of his constituents, who was one of our clients, was entitled to danger pay. And a whole slew of people inside the agency made in responsible positions made statements to the effect that danger pay is paid to all employees who qualify. Now, that's a statement of what the policy is. And I think that, in addition to the fact that it was paid, is sufficient to say, in effect, there is a policy. And we're entitled to go to court to have that policy implemented for our clients. As to the statutory reports, I just should say, those reports are to be filed by the Secretary of State, not by the agency. I thought there was some uncertainty about that. And Your Honor, let's face it. In the Roberts case, the same statute that said may was involved. And it didn't stand in the way of this court saying there was jurisdiction there. Thank you. Thank you. We thank both counsel. The case is submitted. That concludes our proceedings for this morning. All rise. The Honorable Court is adjourned for the day of today.